Anthony K. McClaren, Esq., SBN: 232515
Tariq I. Boulad, Esq., SBN: 330965
Perleberg McClaren LLP
3415 South Sepulveda Blvd., Suite 1100
Los Angeles, California 90034
Telephone: (323) 741-6500
Facsimile: (323) 426-2405

Attorneys for Plaintiff
John Martinez

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES – CENTRAL DIVISION

| | |
|---|---|
| JOHN MARTINEZ, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>TROJAN BATTERY COMPANY, LLC, a Delaware Limited Liability Company, and DOES 1 – 25, inclusive,<br><br>    Defendants. | Case No.:  20STCV46924<br><br>1. Violation of Whistleblower Protection- California Labor Code section 1102.5<br><br>2. Retaliation in Violation of California Labor Code section 6310<br><br>3. Wrongful Termination in Violation of Public Policy<br><br>4. Intentional Infliction of Emotional Distress<br><br>**Demand for Jury Trial** |

## PARTIES, VENUE, AND JURISDICTION

1.    Plaintiff at all times relevant to this action resided in San Bernardino County, California.

2.    The acts pleaded herein were committed against Plaintiff in Los Angeles, California.

3.    Plaintiff is informed and believes, and thereon alleges that Defendant TROJAN BATTERY COMPANY, LLC ("Defendant") is a Limited Liability Company registered with the California Secretary of State.

1

**COMPLAINT FOR DAMAGES**

4.  Plaintiff is informed and believes that Defendant is a wholesale and manufacturer of batteries.

5.  The unlawful acts pleaded herein occurred in Los Angeles County, California.

6.  Venue is proper in Los Angeles County pursuant to California Code of Civil Procedure §§ 395(a) and 395.5.

7.  Plaintiff is unaware of the true names and capacities of DOES 1 through 25, inclusive, and therefore sues these Defendants by their fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

8.  At all times relevant to this action, each of the fictitiously named Defendants was an employee, agent, servant, partner, member, shareholder, officer, director, co-conspirator, or alter ego of Defendant, and was acting within the course and scope of such agency or employment.

9.  Each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that such Defendants directly and proximately caused Plaintiff's injuries as herein alleged.

## FACTUAL ALLEGATIONS

10. Plaintiff incorporates, by reference, all allegations in the above paragraphs of this Complaint, as though fully set forth herein.

11. In or around 2018, Plaintiff began his employment with Defendant as a Maintenance Supervisor. In this role, Plaintiff was responsible for maintenance, technology maintenance, supervision of maintenance technicians, and other similar obligations.

12. In or around March 17, 2020, representatives from Defendant contacted Plaintiff and informed him that an individual had been in contact with Plaintiff who had become very sick and was being tested positive for Covid-19, and that Plaintiff needed to remain at home until he was given notice to return. Once Plaintiff had returned to the facility, Defendant assigned him to check the health status of other employees coming to work. Defendant placed Plaintiff near the employee entrance with a temperature device, and a facemask, and required Plaintiff to check all employee and contractor temperatures. Plaintiff questioned the safety of these protocols, as they directly impacted

him, but was informed by his supervisors that there was nothing to worry about. Plaintiff was given very little, to any, meaningful instruction on how to perform his job duties as a Covid-19 enforcer.

13. Around the same time, Defendant's overall production had declined significantly due to employees not present. Plaintiff again voiced concerns with Defendant about the safety of the plant, in light of this novel and deadly disease, by asking his managers. He was again informed he had nothing to worry about.

14. Commencing in or around mid-March 2020, and continuing, Defendant conducted regular production and supervisor meetings, with many topics of discussion, including Covid-19 protocols. In attendance at these meetings were plant manager Ramiro Salazar, facility supervisors, production supervisors, and maintenance supervisors. From mid-March 2020 going forward, Plaintiff expressed concern about contact with other infected employees, and possible exposure through sharing common washing areas. Defendant would never address these concerns, instead stating that everything was fine. Plaintiff is informed and believes and thereon alleges that Defendant was concealing information from him and others, and further that it was growing frustrated with Plaintiff's constant inquiries.

15. Plaintiff also complained to Mr. Salazar and other individuals about Defendant's requirement that individuals use vacation time in lieu of sick leave when they were asked to remain at home due to possible exposure to Covid-19. Plaintiff believed and expressed the belief that certain employees were being required to remain home without a sufficient company protocol in place for when they could return to work and under what circumstances. This was particularly frustrating when employees who were exposed to the virus could not return for 14 days and would need proof of retesting before being able to return to full time work.

16. Around this time, Defendant tasked Plaintiff with additional obligations to deal with Covid-19 protocols, but it failed to provide a clear framework about its expectations of Plaintiff. As such, Plaintiff never truly understood his obligations. Plaintiff asked Defendant for clarification on these obligations, but Defendant refused or otherwise failed to clarify Plaintiff's responsibilities with respect to Covid management.

**COMPLAINT FOR DAMAGES**

17. In or around August 13, 2020, Plaintiff inquired of his manager, Ramiro Salazar, who was also the Plant Manager for Defendant, about something he had heard on the radio. Specifically, while on his way to work, Plaintiff had learned that Defendant was experiencing a Covid-19 outbreak affecting 61 people, with 3 hospitalizations, and 1 death. This was being reported by the LA County Health Department, and local news stations were reporting on it. This news was shocking and concerning to Plaintiff. Mr. Salazar informed Plaintiff that he was not to talk to any news media outlet and also instructed Plaintiff to remind other workers to remain silent. With respect to the allegations of cases, Mr. Salazar informed Plaintiff those case were inaccurately reported. Mr. Salazar informed Plaintiff not to worry about the situation, and that Defendant was clearing up the situation with the Health Department.

18. Following this conversation, a local Santa Fe City television news reporter arrived at Defendant's site to broadcast Defendant's response to the COVID-19 pandemic. This television news was filmed and broadcast later that day. On this same day and while the news reporters were present, an outside contractor arrived at Defendant's site for a maintenance appointment made by another supervisor. At some point during the contractor's service visit, the contractor was seen and recorded by the news reporter not wearing a facemask. A background image of the contractor not wearing a facemask at Defendant's site was later published by the news source in the article referencing Defendant's response to the COVID-19 Pandemic. Plaintiff was also observed as in close proximity to this outside contractor.

19. Not long after this broadcast aired, in or around August 17, 2020, Defendant terminated Plaintiff. Defendant informed Plaintiff that it was terminating his employment because he had failed to follow the Covid-19 protocol, with respect to the outside contractor who did not have a mask, and the fact that person had been seen on television without a mask. Plaintiff was shocked by the decision, and stated Defendant's protocols were so unclear he had no idea he was supposed to enforce mask wearing guidelines as to outside contractors, as he was not aware of the alleged zero tolerance guidelines. Regardless, Defendant terminated Plaintiff, simply to make him the company fallguy.

20. Defendant never advised Plaintiff of his specific obligations, and never gave him any specific training on outside contractors. Defendant set Plaintiff up to fail, for complaining about the

4

**COMPLAINT FOR DAMAGES**

concerns he had heard about on August 13, 2020. In reality, Defendant retaliated against Plaintiff for Plaintiff voicing concerns about potential unlawful and dangerous things happening at Defendant's facility. These included unclear mandates for individuals to remain at home during alleged sickness, unclear obligations to Plaintiff about Covid-19 protocols, and retaliation against Plaintiff expressing concern regarding the number of persons who were infected with Covid-19 at Defendant's facility, and how the media was concerned about such things.

## FIRST CAUSE OF ACTION

## VIOLATION OF WHISTLEBLOWER PROTECTION PURSUANT TO CALIFORNIA LABOR CODE § 1102.5

21. Plaintiff incorporates by reference, all allegations in the above paragraphs of this Complaint as though fully set forth herein.

22. California Labor Code section 1102.5 provides, in relevant part, that
"An employer shall not make adopt, or enforce any rule or policy preventing an employee from disclosing information to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." Section 1102.5(b) further provides, in relevant part, that "An employer…shall not retaliate against an employee for disclosing information to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." Finally, section 1102.5 provides, in relevant part, that "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."

23. Defendant unlawfully retaliated against and terminated Plaintiff in retaliation for Plaintiff's disclosure of what he reasonably believed was a violation of LA County Public Health protocol, a state statute and/or noncompliance with a local and/or state rule or regulation.

24. Plaintiff had reasonable cause to believe that the above conduct involved violations of California state and LA County laws and regulations. The statutes previously mentioned, evince a

5
**COMPLAINT FOR DAMAGES**

public policy that benefits society at large, were well established at the time of Plaintiff's termination, and are substantial and fundamental.

25. Plaintiff's assertion of his rights under California Labor Code Section 1102.5 was a substantial motivating reason for Defendant's decision to discharge Plaintiff.

26. Defendant's conduct was a substantial factor to causing harm to the Plaintiff as previously pled herein.

27. As a direct and proximate result of Defendant's conduct, Plaintiff has lost and continues to lose wages and work benefits caused by his discharge. The exact amount of such expenses is presently unknown to Plaintiff and he will seek leave of court to amend this Complaint to set forth the exact amount when it has been ascertained.

28. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer losses in earnings and other benefits and will for a period of time in the future be unable to obtain gainful employment, as his ability to obtain such employment and earning capacity have been diminished. The exact amount of such expenses and losses is presently unknown, and Plaintiff will seek leave of court to amend this Complaint to set forth the exact amount when it is ascertained.

29. As a direct and proximate result of Defendant's conduct, Plaintiff suffered general damages as he was psychologically injured. Such injuries have caused, and continue to cause, Plaintiff great mental pain and suffering in an amount in excess of this Court's minimal jurisdiction.

30. Plaintiff is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of Defendant acted with malice and oppression as their unlawful acts were carried out with full knowledge of the extreme risk of injury involved and with willful and conscious disregard for Plaintiff's rights. They also acted fraudulently, as they willfully concealed the fact that Plaintiff's employment rights were being violated, with the intent to deprive her of employment benefits. Accordingly, an award of punitive damages is warranted.

31. Plaintiff is informed and believes, and thereon alleges that the actions of Defendant's employees, officers, directors, and/or managing agents were undertaken with the prior approval,

consent, and authorization of Defendant and was subsequently authorized and ratified by them as well by and through its officers, directors, and/or managing agents.

## SECOND CAUSE OF ACTION
## RETALIATION AND DISCRIMINATION IN VIOLATION OF CALIFORNIA LABOR CODE SECTION 6310

32. Plaintiff incorporates by reference, all allegations in the above paragraphs of this Complaint as though fully set forth herein.

33. California Labor Code section 6310 provides, in relevant part, that "Any employee who is discharged, or in any other manner discriminated against in the terms and conditions of employment by her employer because the employee has made a bona fide oral or written complaint to her employer of unsafe working conditions, or work practices, in her employment or place of employment, shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer."

34. Defendant unlawfully retaliated against and terminated Plaintiff in retaliation for Plaintiff's written complaint about COVID-19 health and safety violations pursuant to the LA County Public Health orders, California Labor Code, state regulations, and was a protected activity under California law.

35. Plaintiff had reasonable cause to believe that the above conduct involved violations of LA County's "Safer at Home" order, California law, and state health regulations.

36. Plaintiff's assertion of his rights under California Labor code section 6310 was a substantial motivating reason for Defendant's decision to discharge Plaintiff.

37. Defendant's conduct was a substantial factor to causing harm to the Plaintiff as previously pled herein.

38. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer losses in earnings and other benefits and will for a period of time in the future be unable to obtain gainful employment, as his ability to obtain such employment and earning capacity have been diminished. The exact amount of such expenses and losses is presently unknown, and

1  Plaintiff will seek leave of court to amend this Complaint to set forth the exact amount when it is
2  ascertained.

3      39.    Plaintiff is informed and believes, and thereon alleges that the employees, officers,
4  directors, and/or managing agents of Defendant acted with malice and oppression as their unlawful
5  acts were carried out with full knowledge of the extreme risk of injury involved and with willful and
6  conscious disregard for Plaintiff's rights and his safety. They also acted fraudulently, as they willfully
7  concealed the fact that Plaintiff's employment rights were being violated, with the intent to deprive
8  her of employment benefits. Accordingly, an award of punitive damages is warranted.

9      40.    Plaintiff is informed and believes, and thereon alleges that the actions of Defendant's
10 employees, officers, directors, and/or managing agents were undertaken with the prior approval,
11 consent, and authorization of Defendant and was subsequently authorized and ratified by them as well
12 by and through its officers, directors, and/or managing agents.

### THIRD CAUSE OF ACTION
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

15     41.    Plaintiff incorporates, by reference, all allegations in the above paragraphs of this
16 Complaint, as though fully set forth herein.

17     42.    At all times relevant to this action, Plaintiff was employed by Defendant.

18     43.    At all times relevant to this action, all provisions of the California Labor Code,
19 including section 1102.5 and 6310, were in full force and effect and were binding upon Defendant.
20 These sections, inter alia, require Defendant to refrain from retaliating against and terminating any
21 employee on the basis of reporting or working in unsafe conditions.

22     44.    Defendant's conduct, as previously alleged, was in retaliation for Plaintiff's assertion
23 of his rights under California Labor Code section 1102.5 and 6310.

24     45.    Plaintiff's assertion of his rights under California Labor Code sections 1102.5 and
25 6310 were a substantial motivating reason for Defendant's decision to retaliate against, and terminate
26 Plaintiff. Defendant's conduct was a substantial factor in causing harm to Plaintiff as set forth herein.

27     46.    The aforementioned provisions evince a policy that benefits society at large, was well-
28 established at the time of Plaintiff's discharge, and is substantial and fundamental.

47. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer losses in earnings and other benefits and will for a period of time in the future be unable to obtain gainful employment, as his ability to obtain such employment and earning capacity have been diminished. The exact amount of such expenses and losses is presently unknown, and Plaintiff will seek leave of court to amend this Complaint to set forth the exact amount when it is ascertained.

48. As a direct and proximate result of Defendant's conduct, Plaintiff suffered general damages as he was psychologically injured. Such injuries have caused, and continue to cause, Plaintiff great mental pain and suffering in an amount in excess of this Court's minimal jurisdiction.

49. Plaintiff is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of Defendant acted with malice and oppression as their unlawful acts were carried out with full knowledge of the extreme risk of injury involved and with willful and conscious disregard for Plaintiff's rights. They also acted fraudulently, as they willfully concealed the fact that Plaintiff's employment rights were being violated, with the intent to deprive him of employment benefits. Accordingly, an award of punitive damages is warranted.

50. Plaintiff is informed and believes, and thereon alleges that the actions of Defendant's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of Defendant and was subsequently authorized and ratified by them as well by and through its officers, directors, and/or managing agents.

## FOURTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

51. Plaintiff incorporates, by reference, all allegations in the above paragraphs of this Complaint, as though fully set forth herein.

52. Based on the foregoing allegations, Plaintiff herein alleges that Defendant's conduct was extreme and outrageous, as to terminate someone for voicing legitimate and bona fide concerns on behalf of others shocks the conscience.

53. By its actions, Defendant had intention to cause harm or acted with reckless disregard of the likelihood of causing distress to Plaintiff.

54. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer losses in earnings and other benefits and will for a period of time in the future be unable to obtain gainful employment, as his ability to obtain such employment and earning capacity have been diminished. The exact amount of such expenses and losses is presently unknown, and Plaintiff will seek leave of court to amend this Complaint to set forth the exact amount when it is ascertained.

55. As a direct and proximate result of Defendant's conduct, Plaintiff suffered general damages as he was psychologically injured. Such injuries have caused, and continue to cause, Plaintiff great mental pain and suffering in an amount in excess of this Court's minimal jurisdiction.

## PRAYER FOR RELIEF

WHERFORE, Plaintiff JOHN MARTINEZ, prays for judgment against TROJAN BATTERY COMPANY, LLC. and DOES 1 through 25, as follows:

1. Past and future economic and non-economic damages, according to proof;

2. Pre-judgment interest, post-judgment interest, costs of suit and attorney's fees according to proof;

3. Injunctive relief compelling Defendant to reinstate Plaintiff to his previous position, prohibiting Defendant from engaging in similar unlawful conduct as complained of herein, and ordering Defendant to establish effective preventive mechanisms to ensure that the conduct complained of herein does not continue in the future;

4. Declaratory relief that Defendant's conduct as complained of herein was a violation of Plaintiff's rights;

5. Civil penalties;

6. Restitution;

7. Punitive damages; and

8. All other relief that the Court deems just and proper

PERLEBERG MCCLAREN LLP

Date: December 7, 2020

By: /s/Anthony McClaren
 Anthony McClaren, Esq.
 Tariq I. Boulad, Esq.
 Attorneys for Plaintiff

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims as provided by California law.

Dated this 7th of December 2020.

/s/Anthony McClaren
Anthony McClaren